IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| LAMONT HENDERSON, ) | Civil Action No. 3:07-227-CMC-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| P. LIGGIN, FEDERAL CORRECTIONAL ) | |
| OFFICER; ) | |
| WARDEN JHON J. LAMANNA; AND ) | |
| OFFICER R. C. MCLAFFERTY, SIA, ) | |
| ALL SUED IN THEIR INDIVIDUAL AND ) | |
| OFFICIAL CAPACITIES, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff, Lamont Henderson, filed this action on January 24, 2007.[1] At the time he was an inmate at the Federal Correctional Institution in Edgefield, South Carolina ("FCI-Edgefield"). He is currently an inmate at the Federal Correctional Institution in Williamsburg, South Carolina. Defendants are P. Liggins ("Liggins")[2] a Federal Correctional Officer; John LaManna, Warden of FCI-Edgefield; and R. C. McLafferty ("McLafferty"), a Special Investigative Agent at FCI-Edgefield. Defendant Liggins filed a motion for summary judgment on October 22, 2007. Defendants LaManna and McLafferty also filed a motion for summary judgment on October 22, 2007. Plaintiff, because he is proceeding pro se, was advised on October 25, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motions

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(e) and (f), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

[2]The correct spelling of this Defendant's name is Liggins. See Liggins' Motion for Summary Judgment.

for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his action. Plaintiff filed responses on December 29, 2007. Defendant Liggins filed a reply on January 8, 2008, and Plaintiff filed a sur-reply on January 8, 2008.

DISCUSSION

Plaintiff appears to allege Bivens[3] claims. In Bivens, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A Bivens claim is analogous to a claim under 42 U.S.C. § 1983: federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of state law. See Harlow v. Fitzgerald, 457 U.S. 800, 814-820 & n. 30 (1982). Harlow, which is often cited for the principle of the qualified immunity of state officials for acts within the scope of their employment, was brought against a federal official. In footnote 30 of the opinion in Harlow, the Supreme Court stated that Harlow was applicable to state officials sued under 42 U.S.C. § 1983. In other words, case law involving § 1983 claims is applicable in Bivens actions and vice versa. Farmer v. Brennan, 511 U.S. 825 (1994); see also Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Osabutey v. Welch, 857 F.2d 220, 221-223 & n. 5 (4th Cir. 1988); and Tarantino v. Baker, 825 F.2d 772, 773-775 & n. 2 (4th Cir. 1987), cert. denied, North Carolina v. Tarantino, 489 U.S. 1010 (1989).

Plaintiff alleges that his constitutional rights were violated on May 18, 2005, when Defendant Liggins allegedly used excessive force against him. He also claims that Liggins threatened him after the incident. Additionally, Plaintiff claims that his constitutional rights were

---

[3] See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).

2

violated during an investigation of the alleged incident and by his placement in administrative segregation in the Special Housing Unit ("SHU") during the investigation.

Defendants LaManna and McLafferty contend that they are entitled to summary judgment because: (1) Plaintiff fails to establish a claim for excessive force; (2) Plaintiff fails to show that his placement in SHU deprived him of a protected liberty interest; (3) Plaintiff had no Sixth Amendment right to counsel as to the investigation; (4) Plaintiff fails to show that his constitutional rights were violated as to any failure to properly investigate the alleged incident; (5) this court lacks jurisdiction over claims against these Defendants in their official capacities; and (6) these Defendants are entitled to qualified immunity. Defendant Liggins contends that he is entitled to summary judgment because: (1) this Court lacks jurisdiction over claims against Liggins in his official capacity; (2) Plaintiff cannot establish an Eighth Amendment claim because his injuries were de minimis; and (3) Liggins is entitled to qualified immunity.

1. <u>Excessive Force Claim</u>

Plaintiff claims that he was trying to return to his cell on May 18, 2005, to avoid being "locked out," when he ran into Liggins, after which Plaintiff apologized. Plaintiff claims that he proceeded to enter his cell at which time he was caught in a choke hold from behind by Liggins who slammed him onto the concrete floor and stood over him for about fifteen to twenty seconds with an aggressive facial expression. Liggins then locked Plaintiff into his cell. Plaintiff claims that Liggins later came back and apologized, stating that his actions were just a reaction to the situation. Liggins contends that Plaintiff fails to establish an Eighth Amendment claim because he cannot meet the objective and/or subjective portion of his claim. Defendants LaManna and McLafferty contend that, because Plaintiff fails to establish an excessive force claim, they cannot be held secondarily

3

liable. In his January 8, 2008 sur-reply, Plaintiff claims that Defendant Liggins is not entitled to summary judgment or immunity because Plaintiff has shown, through his medical records, that he was injured during the May 18, 2005 incident.

Determination of whether cruel and unusual punishment has been inflicted on a prisoner in violation of the Eighth Amendment requires analysis of subjective and objective components. See Wilson v. Seiter, 501 U.S. 294, 302 (1991). First, the objective portion of an excessive force claim requires a prisoner to show that the injury inflicted was sufficiently serious. Although a plaintiff need not show a significant injury, see Hudson v. McMillian, 503 U.S. 1, 7 (1992), the Fourth Circuit, in Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994), cert. denied, 513 U.S. 1114 (1995), held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Norman v. Taylor, 25 F.3d at 1263. Because de minimis injury may serve as evidence that de minimis force was used, an excessive force claim should not lie where a prisoner's injury is de minimis. See id. at 1262-63. With only de minimis physical injury, a prisoner may only recover if the challenged conduct resulted "in an impermissible infliction of pain" or was otherwise "of a sort repugnant to the conscience of mankind." Id. at 1263 n. 4. The Fourth Circuit has explained:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in the impermissible infliction of pain. In these circumstances, we believe that either the force will be "of a sort repugnant to the conscience of mankind," and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

Id. at 1263, n. 4.

4

Plaintiff fails to show that his injuries were anything more than de minimis. On May 19, 2005 (the day after the alleged incident), K. Hobbs, R.N. wrote that Plaintiff was assessed that morning for a complaint of back pain after he claimed he was slammed on the concrete floor on his back by an officer. Nurse Hobbs noted:

> THERE WAS NO VISIBLE SIGN OR SYMPTOM OF INJURY OR TRAUMA TO [PLAINTIFF'S] BACK, HEAD, NECK, UPPER TORSO, ARMS OR HANDS. HE WAS ABLE TO MOVE WITH EASE, INCLUDING PULLING OFF AND PUTTING ON TWO SHIRTS OVER HIS HEAD WITH NO HESITATION OR GUARDING. HIS GAIT WAS NORMAL AND HE COULD SIT AND STAND WITH EASE.

Her medical notes indicate that no medical treatment was needed at that time. Liggins' Motion for Summary Judgment, Ex. C. Plaintiff appears to argue that he has shown a serious injury because he continued to use pain medication for a back injury he sustained during the alleged incident. Review of those records, however, reveals that Plaintiff was prescribed Ibuprofen for pain in August 2004, well before the alleged incident. Although Plaintiff was prescribed Acetaminophen for back pain on July 6, 2005, this was nearly two months after the alleged incident. There is no record of any examination for Plaintiff for back pain again until November 2005, nearly six months after the alleged incident. At that time it was noted that Plaintiff had no limitation in his range of motion. Only Ibuprofen was prescribed. On December 27, 2005, Plaintiff was noted to have good range of motion, no spasms, and no rigidity. On January 27, 2006 it was noted that x-rays of Plaintiff's thoracic and lumbar spine showed no acute abnormalities. On August 11, 2006, MRI of Plaintiff's lumbar and thoracic spines failed to reveal any problems. Disc spaces were noted to be maintained with no visualized fractures, no evidence of disk herniation, and no evidence of spinal stenosis. There was no loss of signal regional to the intervertebral disks of Plaintiff's lumbar spine. Exhibit A (Plaintiff's BOP Medical Records and MRI Medical Record from Dr. Bert L. Booker).

Defendants' use of force was de minimis. See e.g., Norman v. Taylor, 25 F.3d at 1262-64 (keys swung at inmate's face which struck his thumb was de minimis force); Gavin v. Ammons, 21 F.3d 430, 1994 WL 117983 (7th Cir. April 6, 1994)[Table](guard's pulling of inmate's hair was de minimis force); Calabria v. Dubois, 23 F.3d 394, 1994 WL 209938 (1st Cir. May 24, 1994)[Table](radio belt thrown at face of inmate causing blood to appear was de minimis force); White v. Holmes, 21 F.3d 277, 280-81 (8th Cir. 1994)(keys swung at inmate which slashed his ear was de minimis force); Jackson v. Pitcher, 966 F.2d 1452, 1992 WL 133041 (6th Cir. June 16, 1992)[Table](guard's stomp on the hand of inmate was de minimis force), cert. denied, 506 U.S. 1024 (1992); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985)(corrections officer's pushing a cubicle wall so as to strike plaintiff's legs, brusque order to inmate and poking inmate in the back was de minimis force); see also Roberts v. Samardvich, 909 F. Supp. 594 (N.D.Ind. 1995)(grabbing inmate, pushing him up the stairs toward his cell, and placing him in cell cuffed, shackled, and secured to the door was de minimis force under the circumstances); McMiller v. Wolf, 1995 WL 529620 (W.D.N.Y. August 28, 1995)(snatching inmate's mirror, breaking it against cell bars and thereby lacerating inmate's finger was de minimis force); Crow v. Leach, 1995 WL 456357 (N.D.Cal. July 28, 1995)(corrections officer's pushing inmate into chair causing his shoulder to break window behind him was de minimis force; Jackson v. Hurley, 1993 WL 515688 (N.D.Cal. November 23, 1993)(blow to back of neck with forearm and kick to the ankle of inmate were de minimis force); DeArmas v. Jaycox, 1993 WL 37501 (S.D.N.Y. February 8, 1993), aff'd, 14 F.3d 591 (2d Cir. 1993)(corrections officer's punching inmate in arm and kicking inmate in leg was de minimis force); Olson v. Coleman, 804 F. Supp. 148, 150 (D.Kan. 1992)(single blow to head of handcuffed inmate was de minimis force); Candelaria v. Couglin, 787 F. Supp. 368, 374-75

(S.D.N.Y. 1992)(fist pushed against neck of inmate causing him to lose his breath was de minimis force), aff'd, 979 F.2d 845 (2d Cir. 1992); Neal v. Miller, 778 F. Supp. 378, 384 (W.D.Mich. 1991)(backhand blow with fist to the groin of inmate was de minimis force); Ramos v. Hicks, 1988 WL 80176 (S.D.N.Y. July 25, 1988)("bent wrist comealong hold" or single punch not unreasonable or excessive where inmate ignored repeated order, became agitated, and attempted to damage state property); Anderson v. Sullivan, 702 F. Supp. 424, 426 (S.D.N.Y. 1988)(corrections officer's pulling inmate's arms behind back, lifting them up and forcing inmate's face into cell bars was de minimis force).

Plaintiff's injuries were de minimis. Thus, Plaintiff has not met the objective component of his excessive force case and has not shown that Defendants violated his Eighth Amendment rights.

Even if Plaintiff could show he meets the objective component, he fails to show he meets the subjective component of his Eighth Amendment claim. Appropriate force may be used by prison officials when it is intended to maintain the discipline within a prison institution or to restore order. See Hudson, 503 U.S. at 6; Whitley v. Albers, 475 U.S. 312, 320-21 (1986). When an inmate claims prison officials used excessive force "he is forced to meet a higher standard (than deliberate indifference) to establish the subjective component." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The subjective portion of an excessive force claim requires a prisoner to demonstrate that officials inflicted force sadistically and maliciously for the sole purpose of causing harm. See Whitley, 475 U.S. at 320-21; Williams v. Benjamin, 77 F.3d at 761. The Supreme Court has directed that several factors should be balanced in determining whether prison officers acted maliciously and sadistically. These factors, originally set out in Whitley, include:

> (1) the need for the application of force,

>    (2) the relationship between that need and the amount of force used,
>
>    (3) the threat "reasonably perceived by the responsible officials," and
>
>    (4) "any efforts made to temper the severity of a forceful response."

Hudson, 503 U.S. at 7 (citations omitted); see also Williams v. Benjamin, 77 F.3d at 762. The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis. Hudson, 503 U.S. at 7.

In this case, analysis of the factors set out in Whitley fails to show that Defendant Liggins acted maliciously and sadistically, and thus Plaintiff fails to establish an Eighth Amendment claim. Plaintiff admits that he ran into Liggins as he was hurrying to return to his cell. Liggins states that Plaintiff ran into him from behind, at which time he instinctively pushed Plaintiff away. Liggins Aff., Para. 3. Liggins submitted an affidavit from Johnnie Moore ("Moore"), an inmate who was housed in cell 320 (Plaintiff was housed in cell 319). Moore states that he was present when Plaintiff ran into an officer, Plaintiff got up off the ground, and the officer secured Plaintiff's cell. He heard the officer come back and talk to Plaintiff. The officer said that he was sorry, but Plaintiff was not supposed to be running up on a staff member like Plaintiff did. Liggins Motion for Summary Judgment, Ex. B. Review of a videotape submitted by Liggins, although grainy, merely shows that an inmate ran into the back/side of a corrections officer and the corrections officer pushed the inmate away and onto the ground. After the incident, the inmate got up almost immediately and went into his cell. As discussed above, Plaintiff fails to show more than de minimis injuries from the alleged incident. Further, there was a threat reasonably perceived by

8

Defendant Liggins because Plaintiff hit him from the side/back as Plaintiff hurried to get into the cell.[4]

    2.    <u>Verbal Threat</u>

Plaintiff alleges that Liggins came back to his cell a second time at which time he threatened Plaintiff by stating that if Plaintiff reported the incident, Liggins would write Plaintiff up on a disciplinary infraction. He claims that Liggins stated that nothing would happen to him (Liggins) because he was on staff. Liggins contends that he did not threaten Plaintiff and the alleged incident does not constitute a constitutional violation.

Plaintiff fails to show that any verbal harassment by Defendant Liggins violated his constitutional rights. Verbal abuse of inmates by guards, without more, fails to state a claim under § 1983. <u>Keenan v. Hall</u>, 83 F.3d 1083, 1092 (9th Cir. 1996)(disrespectful and assaultive comments did not violate Eighth Amendment); <u>McDowell v. Jones</u>, 990 F.2d 433, 434 (8th Cir. 1993)(verbal threats and name calling are usually not actionable under § 1983); <u>Northington v. Jackson</u>, 973 F.2d 1518, 1524 (10th Cir. 1992); <u>Collins v. Cundy</u>, 603 F.2d 825 (10th Cir. 1979)(sheriff's idle threat

---

[4]In his opposition memorandum (Doc. 40), Plaintiff argues that Liggins failed to follow BOP policy because he did not report the use of force. Liggins states that he did not file an incident report because he felt Plaintiff had run into him by accident and the only force used was a reflex action. Liggins Aff., Para. 8.

    To the extent Plaintiff alleges that Defendants did not follow BOP policies, his claim fails as a failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation. <u>See</u> <u>United States v. Caceres</u>, 440 U.S. 741 (1978); <u>see also</u> <u>Riccio v. County of Fairfax, Virginia</u>, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); <u>Keeler v. Pea</u>, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

to hang a prisoner did not give rise to a § 1983 claim); Lamb v. Hutto, 467 F. Supp. 562 (E.D.Va. 1979)(verbal assaults and threats do not state a constitutional claim actionable under § 1983).

        3.        Transfer/Prison Placement/Administrative Segregation

Plaintiff alleges that his constitutional rights were violated because he was placed in the SHU pending an investigation of his claims and he remained in the SHU for six months. Defendants contend that Plaintiff was placed in the SHU to ensure his safety during the investigation of his claims. LaManna states that Plaintiff was provided written notice as to the reasons for his placement in SHU. LaManna Aff., Para. 3. Defendants contend that Plaintiff fails to show that he was deprived of a protected liberty interest by his placement in SHU.

Plaintiff fails to show that his constitutional rights were violated as to his placement in the SHU. A prisoner has no constitutional right to serve a sentence in any particular institution, or to be transferred or not transferred from one facility to another. See Olim v. Wakinekona, 461 U.S. 238, 249-50 (1983); Meacham v. Fano, 427 U.S. 215, 224-25 (1976). Prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement. Hewitt v. Helms, 459 U.S. 460, 468 (1983)(no constitutional right under the Due Process Clause to a particular security classification or prison placement). In Sandin v. Conner, 515 U.S. 472 (1995), the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483. In Sandin, the Court concluded that the plaintiff's "segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. at 485. Under the analysis set forth in Sandin, Plaintiff

10

cannot show that he has a protected liberty interest in his security or custody classification. Id. at 483-85; see Backey v. South Carolina Dep't. of Corrections, 73 F.3d 356, 1996 WL 1737 (4th Cir. Jan. 3, 1996)[Table](allegations of wrongful placement in administrative segregation do not involve the kind of significant or atypical hardship necessary to invoke due process rights); Joseph v. Gillespie, 73 F.3d 357, 1995 WL 756280 (4th Cir. December 21, 1995)[Table]("Administrative segregation is not an 'atypical and significant hardship' relative to the ordinary incidents of prison life that would give rise to a liberty interest protected by any procedure."); Reffritt v. Nixon, 917 F. Supp. 409, 412 (E.D.Va. 1996)(plaintiff has no protected interest in remaining in or being released into general population), aff'd, 121 F.3d 699 (4th Cir. 1997).

    4.        Sixth Amendment/Right to Counsel/ Miranda

Plaintiff claims that his Sixth Amendment right to counsel was violated. Specifically, he claims that Defendant McLafferty questioned him during the investigation without Plaintiff's prison counselor, Mr. Holland, being present. Defendant LaManna and McLafferty contend that Plaintiff's right to counsel was not violated because no such right attaches without the initiation of some judicial criminal proceedings.

A person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. Powell v. Alabama, 287 U.S. 45 (1932). The right to counsel is triggered by the initiation of formal criminal proceedings, Kirby v. Illinois, 406 U.S. 682 (1972) and United States v. Gouvenia, 467 U.S. 180 (1984), and attaches at critical stages of criminal proceedings. Hamilton v. Alabama, 368 U.S. 52 (1961). Plaintiff has not alleged that he was subjected to the process of a formal criminal proceeding as to the administrative actions allegedly taken against him.

Plaintiff also asserts that his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), were violated. There is no cause of action under § 1983 for a Miranda violation. See Chavez v. Martinez, 538 U.S. 760 (2003). "Miranda warnings are a procedural safeguard rather than a right explicitly stated in the Fifth Amendment. The remedy for a Miranda violation is the exclusion from evidence of any ensuing self-incriminating statements. The remedy is not a § 1983 action." Neighbour v. Covert, 68 F.3d 1508, 1510 (2d Cir.1995) (per curiam) (internal citations omitted).

5.     Due Process Claim/Investigation

Plaintiff alleges that his Fifth Amendment due process rights were violated because Defendant McLafferty failed to fully investigate witnesses and complete an investigation by failing to secure a video camera, chronological medical records, statements of all witnesses, copies of an incident report, and evidence photographs. Defendant McLafferty contends that there is no factual basis for this claim as he reviewed Plaintiff's medical records and the videotape was retrieved and reviewed. He contends that Plaintiff's claim fails because he does not specify how the alleged failure to investigate violates his right to Due Process, Plaintiff possesses no constitutional or federal right to have his allegations property investigated, and this claim resulted in no damage or deprivation to Plaintiff.

McLafferty states that he questioned witnesses, Plaintiff, and Officer Liggins as part of his investigation. He obtained and reviewed the videotape from the camera in the housing unit where the assault allegedly occurred. He states that he concluded that Officer Liggins used an appropriate immediate use of force. McLafferty states that his investigation revealed that Plaintiff ran into and made physical contact with Liggins who was securing cell doors for the 10:00 p.m. count. He concluded that Liggins had his back turned and used an immediate and appropriate use of force to

12

protect himself and control the situation. McLafferty states he concluded that no excessive force was used, no assault occurred, no threats were made, there was no further confrontation, and the parties apologized to each other. McLafferty Aff., Paras. 5, 7-8.

An inmate's rights at prison disciplinary hearings are defined by the Due Process Clause of the Fourteenth Amendment. See Wolff v. McDonnell, 418 U.S. 539, 568-69 (1974). The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. See Board of Regents v. Roth, 408 U.S. 564, 570 (1972).[5] Thus, the first step in analyzing a procedural due process claim is identifying whether the alleged deprivation impacts such a protected interest. See Beverati v. Smith, 120 F.3d 500, 502 (4th Cir.1997); Mallette v. County Employees' Supplemental Ret. Sys. II, 91 F.3d 630, 634 (4th Cir.1996). Here, Plaintiff's claim fails because he has not alleged that any failure to investigate impacted any of his protected interests.

      6.      Official Capacity Claims

Defendants contend that this court lacks subject matter jurisdiction to hear Plaintiff's claims against Defendants in their official capacities. This court lacks subject matter jurisdiction as to Plaintiff's Bivens claims against Defendants in their official capacities. The United States cannot be sued without its consent, and consent is a prerequisite to a suit against the United States. United States v. Mitchell, 463 U.S. 206, 212 (1983). The United States has not consented to suit

---

[5]When the Due Process Clause applies, a prisoner is entitled to only a minimal standard of due process in the prison disciplinary setting. The following requirements are sufficient to satisfy this minimal standard of due process in the prison setting:
1.     Advance written notice of the charges;
2.     A written statement by the committee, citing the evidence on which they relied and the reasons for the action taken; and
3.     The right by the inmate/defendant to call witnesses and present documentary evidence, if institutional safety will not be jeopardized.

Wolff v. McDonnell, 418 U.S. at 563-576 (1974).

under the Bivens doctrine. The bar of sovereign immunity cannot be avoided by naming officers or employees of the United States as defendants. Gilbert v. Da Grossa, 756 F.2d 1455, 1458 (9th Cir. 1985); cf. Hawaii v. Gordon, 373 U.S. 57, 58 (1963). Claims against Defendants in their official capacities are barred by the doctrine of sovereign immunity. See Hagemeier v. Block, 806 F.2d 197, 202 (8th Cir. 1986), cert. denied, 481 U.S. 1054 (1987); Gilbert, 756 F.2d at 1458.

       7.      Qualified Immunity

Defendants also argue that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly

14

established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

## CONCLUSION

Based on review of the record, it is recommended that Defendant Liggins' motion for summary judgment (Doc. 29) be granted and the motion for summary judgment of Defendants LaManna and McLafferty (Doc. 30) be granted.

>Respectfully submitted,
>
>s/Joseph R. McCrorey
>United States Magistrate Judge

March 28, 2008
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).